**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHAEL MESSINA<br>658 West Rolling Road<br>Springfield, PA 19082 | : |
| | : DOCKET NO.: 2020-CV-2416 |
| v. | : |
| WESTMINSTER AMERICAN<br>INSURANCE COMPANY<br>8890 McDonogh Road, Suite 310<br>Owings Mills, MD 21117 | : |

## CIVIL ACTION COMPLAINT

### I. PARTIES

1. Plaintiff, MICHAEL MESSINA, is an adult individual residing at the address as set forth above.

2. Defendant, WESTMINSTER AMERICAN INSURANCE COMPANY, is a corporation duly organized and existing which is licensed to issue policies of insurance in the Commonwealth of Pennsylvania and maintains its principal place of business at the address set forth above.

3. At all times material hereto, Defendant was acting either individually or through its duly authorized agents, servants, workmen or employees, who were acting within the course and scope of their employment and on the business of said employer.

### II. JURISDICTION

4. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different States.

## III. CAUSES OF ACTION, DAMAGES AND RELIEF REQUESTED

5. Defendant in its regular course of business issued to Plaintiff a policy of insurance, policy number BOP591002303, covering Plaintiff's commercial building located at 62 Sherbrook Blvd, Upper Darby PA 19082 (“the policy”). See copy of policy attached hereto, made part hereof, and marked Exhibit "A".

6. On or about May 25, 2018, while said policy of insurance was in full force and effect, Plaintiff suffered direct physical loss to the insured premises, caused by a collapse of part of the roof, resulting in damage to the insured premises in the amount of $348,894.12 (“the loss”), as set forth in the estimate of Alliance Adjustment Group, a true and correct copy of which is attached hereto, made part hereof, and marked Exhibit "B". Plaintiff also sustained loss of rental income in the amount of $59,500.00, as set forth in the summary attached hereto, made part hereof, and marked Exhibit "C".

7. Notice of Plaintiff’s covered loss was given to Defendant in a prompt and timely manner and Plaintiff has done and otherwise performed all things required of Plaintiff under the policy of insurance issued by Defendant, including cooperating with Defendant's investigation; mitigating damages where reasonable, required and/or possible; providing Defendant with all available information and complying with all conditions precedent.

8. Defendant, despite demand for benefits under its policy of insurance has failed and refused to pay to Plaintiff those benefits due and owing under said policy of insurance. Specifically, Defendant paid a fraction of the building damage and refused to pay any money for Plaintiff’s loss of rental income.

9. Solely as a result of Defendant's failure and refusal to pay benefits to Plaintiff as required under the aforementioned policy of insurance, as well as the mishandling of Plaintiff’s claim, Plaintiff has suffered loss and damage in an amount in excess of

$75,000.00, exclusive of interest and costs.

**A. Breach of Contract**

10. Plaintiff incorporates by reference herein the facts and allegations contained in paragraphs 1 through 9 above as though same were set forth herein at length.

11. Defendant has breached its contractual obligations to pay benefits to Plaintiff for a loss covered under Defendant's policy of insurance.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount in excess of $75,000.00, exclusive of interest and costs.

**B. Bad Faith**

12. Plaintiffs incorporate by reference herein the facts and allegations contained in paragraphs 1 through 11 above as though same were set forth herein at length.

13. Defendant has engaged in Bad Faith conduct toward Plaintiffs and has treated Plaintiffs unreasonably and unfairly with respect to its adjustment of Plaintiffs' covered loss, in violation of 42 Pa.C.S.A. §8371.

14. Upon receiving notice of the loss, Defendant retained the services of engineer, Todd L. Gerhart, P.E., S.E. of Barry Isett & Associates, Inc.

15. Mr. Gerhart prepared a report dated June 1, 2018, which stated, inter alia, that "[t]he roof framing of the subject unit has partially collapsed and was found to be unsafe due to failure of the roof joists." See Gerhart report attached as Exhibit "D".

16. The policy specifically covers loss caused by collapse of a covered building or portion of a covered building. See Exhibit "A" at p. 13.

17. Despite the fact that the loss was caused by collapse, as even Defendant's own engineer opined, Defendant denied coverage for Plaintiff's claim on August 22, 2018. See August 22, 2018, denial letter attached hereto, made part hereof, and marked Exhibit

"E".

18. At the time Defendant denied coverage for the loss, Plaintiff was represented by a public adjuster, who after the claim was denied, withdrew his representation.

19. In or about November 2018, Plaintiff then retained the services of a new public adjuster, Alliance Adjustment Group ("AAG"), who requested that Defendant reevaluate its denial, as the Gerhart engineering report supports coverage under the policy's collapse provision.

20. On November 28, 2018, Defendant wrote to AAG and reiterated its denial of coverage. See November 28, 2018, denial letter attached hereto, made part hereof, and marked Exhibit "F".

21. Thereafter, AAG, on behalf of Plaintiff, began to question Defendant's basis for denial and again advised Defendant that the policy's collapse provision supported coverage for the loss. See email from Michael Pacchione of AAG dated March 14, 2019, attached hereto, made part hereof, and marked Exhibit "G".

22. After receiving no response from Defendant to the March 14, 2019, email, Pacchione called Defendant's representative, Kristin Ellis, and emailed her on April 24, 2019. See Exhibit "G".

23. On May 9, 2019, Defendant responded to Pacchione that its attorney was reviewing the matter and that it will contact him following the review. See email from Defendant dated May 9, 2019, attached hereto, made part hereof, and marked Exhibit "H".

24. On June 10, 2019, Defendant advised AAG that its attorney requested that Defendant's engineer reinspect the property "before a final coverage decision can be made." See email from Defendant dated June 10, 2019, attached hereto, made part hereof, and marked Exhibit "I".

25. On behalf of Plaintiff, on June 10, 2019, AAG permitted the second inspection by Defendant's engineer, but advised that significant repairs have already been made by Plaintiff, including replacement of the roof. See Exhibit "I".

26. After several follow up inquiries with Defendant, and not hearing anything further from Defendant nor its engineer regarding the reinspection, AAG threatened to report Defendant's conduct to the Pennsylvania Insurance Department.

27. AAG was then advised that because of the repairs that have been done, another engineering inspection would not be needed and its attorney would be presenting its engineer with some questions so that Defendant could reevaluate its coverage decision.

28. On July 24, 2019, Defendant's counsel wrote to AAG and advised that Defendant was now rescinding its coverage declination and requested that Plaintiff provide Defendant with "all proofs of loss and supporting documentation for claimed property damage…" See letter of Defendant's counsel, attached hereto, made part hereof, and marked Exhibit "J".

29. On August 29, 2019, Plaintiff provided Defendant's counsel with the requested documents.

30. Follow ups to Plaintiffs submission were made to Defendant on September 18, 2019, and September 25, 2019.

31. On September 25, 2019, Defendant advised AAG that payment would be forthcoming.

32. Defendant's original coverage decision was ultimately proven to be wrong and Defendant refused to overturn its denial for fourteen (14) months after the loss, resulting in substantial financial harm to Plaintiff, including but not limited to: having to pay significant amounts of money to make temporary and permanent repairs to the building; and an

exacerbation of loss of rental income due to Defendant's refusal to provide coverage and funding for the covered loss sooner, which would have enabled Plaintiff to make repairs much earlier.

33. Defendant knew or should have known that collapse was a covered loss under the policy, that its own engineer determined the loss to have been caused by collapse, yet Defendant denied coverage and deprived Plaintiff of policy benefits for over a year.

34. Defendant knew or should have known as of June 1, 2018, that Plaintiff's loss was covered by the policy, which is the date its own engineer determined the cause of loss to be collapse, and thus covered by the policy.

35. Defendant's failure to afford coverage for the loss in June 2018, was without reasonable basis and Defendant knew or recklessly disregarded its lack of reasonable basis when it deprived Plaintiffs of policy benefits.

36. In addition, even after finally admitting coverage for the loss fourteen (14) months later, to date, Defendant continues to fail and refuse to pay for Plaintiff's entire loss. Specifically, Defendant:

a. refused to pay for the entire roof, which required complete replacement according to Plaintiff's roofer;

b. ignored the opinions and facts presented by Plaintiff's roofer as to why the entire roof needed to be replaced, and not only a small section that Defendant agreed to pay for;

c. refused to pay for any loss of rental income, despite Plaintiff paying for such coverage, and despite Plaintiff actually suffering loss of rental income in the amount of $59,500.00 (See Exhibit "C"); and

d. refused to pay for many other items of damage sustained in the covered loss.

37. Defendant's continued failure and refusal to pay for the items referenced above is without any credible support, without a reasonable basis and done with reckless disregard of its lack of reasonable basis.

38. Defendant has treated Plaintiff with reckless indifference and disregard under the circumstances.

39. Solely as a result of Defendant's bad faith misconduct as aforesaid, Plaintiff has been required to obtain counsel to commence the present action to recover benefits due and owing under the policy of insurance issued by Defendant for Plaintiff's covered loss and has incurred costs and other expenses in connection with said claim.

WHEREFORE, Plaintiff demands judgment against Defendant for punitive damages, counsel fees and costs, together with interest on Plaintiff's claim in an amount equal to the prime rate of interest plus three percent (3%), in an amount in excess of $75,000.00.

**ZENSTEIN, KOVALSKY BUCKALEW, LLC**

BY: ______________________________

JOSEPH A. ZENSTEIN, ESQUIRE
MICHAEL K. KOVALSKY, ESQUIRE
Attorneys for Plaintiffs
1240 Old York Road, Suite 101
Warminster, PA 18974
215-230-0800

Date: 6/30/20